IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

PEGGY L. BOWMAN, )
)
      Plaintiff, )
)
)    CIV-05-1426-F
v. )
)
JO ANNE B. BARNHART, )
  Commissioner of Social Security )
   Administration, )
)
      Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 1382.   Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and both parties have briefed the issues.   The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).   For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed her application for benefits on March 21, 2003, alleging that she became disabled on October 6, 1997, due to arthritis in her lower back, decreased function in her left wrist, asthma, vision problems, restless leg syndrome, and anxiety attacks. (TR 62-64, 78).

1

She stated that she had undergone surgery in Missouri on her left wrist in 1998 and that she hurt her back in 1993 while working as a motel housekeeper. (TR 80, 90).  Plaintiff also stated that she received monthly benefits from the Veterans Administration stemming from her deceased husband's disability. (TR 63, 95).  Her earnings record reflects that Plaintiff had no earnings in 1983 to 1993, 1996, 1998, and 2000 to 2004. (TR 66, 71).  Plaintiff described an inability to lift over twenty-five pounds due to her left wrist's functional limitation and an inability to stand or walk for more than 15 to 20 minutes related to lower back pain and limitations. (TR 98, 103).

The medical record shows that Plaintiff received medical treatment in 2002 at a clinic in Missouri for asthma, back strain, anxiety/depression, and allergic rhinitis. (TR 146-168). In May 2002, Plaintiff underwent an annual physical examination at her treating clinic, and the examiner noted Plaintiff was encouraged to stop smoking and to increase her aerobic activity and strength training. (TR 152).  Plaintiff reported in July 2002 that she was moving to Oklahoma. (TR 149).  She was treated at a medical clinic in Oklahoma in September 2002 for osteoarthritis in her lower back, for which medication was prescribed. (TR 207). Plaintiff returned to this clinic and was prescribed medications for sleeping and allergic rhinitis in October 2002 and November 2002.  (TR 203, 205).  Medications were dispensed for a burn to two of Plaintiff's fingers in a cooking accident in January 2003. (TR 201).

In a consultative physical examination conducted for the agency in June 2003 Plaintiff reported she injured her back in 1993 or 1994 while vacuuming at a housekeeping job and thereafter she had experienced chronic intermittent episodes of low back and hip pain without

radiculopathy. (TR 210).   The consultative examiner noted that Plaintiff exhibited "no chronic pain behaviors" or cognitive disorder and that she did not appear to be depressed or acutely or chronically ill. (TR 211).   The consultative examiner noted that Plaintiff exhibited normal motor, sensory, and reflex functions, good muscle strength and tone in her upper and lower extremities, normal gait with a slight limp, adequate grip strength, and good finger dexterity. (TR 211-212).   The examiner's clinical impression was chronic low back pain without radiculopathy, bronchial asthma, and status-post surgical procedure on left wrist with limited range of motion.   (TR 212).

Plaintiff's application was administratively denied. (TR 28, 29).   At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge O'Bryan on January 24, 2005, at which Plaintiff and a vocational expert ("VE") testified. (TR 252-272). At the time of her administrative hearing, Plaintiff was 49 years old, lived with her 18-year-old daughter, had a high school equivalency degree and some business courses, and had not worked since August 1999.  Plaintiff testified she was right-handed, took anti-inflammatory medication for pain in her low back which worsened with standing or walking over 20 to 30 minutes, used inhalers for asthma as needed, and had adjusted the manner in which she gripped items to keep from dropping them.  Plaintiff also testified that her left hand cramped when using a keyboard, she needed new eyeglasses, and she experienced depression "every couple of months" causing her to isolate herself for two to three days. (TR 262-263). Plaintiff stated she cooked meals and maintained her apartment with frequent rest periods, used public transportation for grocery shopping, and wrote poetry and short stories as a

hobby.  Plaintiff stated that she could not work because she "can't stand on my feet ..." (TR 265).

The VE testified that Plaintiff's previous jobs as a housekeeper, food prep worker, cashier, fast food worker, and hostess were performed at the light exertional level. (TR 266). The VE further testified that all of these jobs require the individual "to be on their feet the majority of the day." (TR 267-268).  The VE stated that the housekeeper and food prep worker positions would require lifting more than ten pounds but that the remainder of these jobs would not require lifting over ten pounds. (TR 269-270).  The ALJ posed a series of hypothetical questions to the VE concerning the availability of jobs, and the Plaintiff's attorney also questioned the VE.

Subsequently, the ALJ issued a decision in which the ALJ found that Plaintiff had severe impairments due to "disorders of the back, discogenic and degenerative" and asthma. (TR 20).  Despite these impairments, the ALJ found that Plaintiff was capable of performing work at the light exertional level "with limited use of [her] left hand and occasional stooping." (TR 21).  Relying on the VE's testimony regarding the exertional requirements of Plaintiff's past work, the ALJ found that Plaintiff's residual functional capacity ("RFC") for work did not preclude her from performing her previous jobs as a cashier, housekeeper, food preparer, fast food worker, or hostess, and, consequently, that Plaintiff was not disabled within the meaning of the Social Security Act and not entitled to benefits. (TR 22-23).  The agency's Appeals Council declined Plaintiff's request to review the ALJ's decision (TR 6-8). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in

the ALJ's decision.

II. Standard of Review

Judicial review of this Complaint is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). The court will look to the record as a whole to determine whether the evidence which supports the Commissioner's decision is substantial in light of any contradicting evidence. Nieto v. Heckler, 750 F.2d 59, 61 (10th Cir. 1984); Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983)(per curiam). If the Commissioner fails to apply the correct legal standard or substantial evidence does not support the Commissioner's decision, the court may reverse the Commissioner's findings. Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984)(per curiam). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). To find that the Commissioner's decision is supported by substantial evidence in the record, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion. Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir. 1988).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(A). The

5

Commissioner applies a five-step inquiry to determine whether a claimant is disabled.  See 20 C.F.R. § 416.920(b)-(f) (2006); see also Williams v. Bowen, 844 F.2d 748, 750-752 (10th Cir. 1988)(describing five steps in detail).  The claimant bears the initial burden of proving that she has one or more severe impairments.  20 C.F.R. § 416.912 (2006); Turner v. Heckler, 754 F.2d 326, 328 (10th Cir. 1985).  Where the plaintiff makes a *prima facie* showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show "the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." Turner v. Heckler, 754 F.2d at 328; Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. Step Four - Consideration of Opinions from "Other Sources"

The ALJ followed the requisite sequential evaluation procedure and determined at the fourth step that Plaintiff was not disabled because she was capable of performing her previous jobs.  Plaintiff contends that the ALJ erred at this step.  First, Plaintiff contends that the ALJ erred in failing to properly evaluate the opinion of a nurse practitioner who provided medical treatment for Plaintiff in 2002.  Secondly, Plaintiff contends that the ALJ should have, but failed to, explain what weight he attached to the nurse's opinion or provide reasons for rejecting that opinion.

Pursuant to 20 C.F.R. § 416.927(a)(2), "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including ... symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and ...

6

physical and mental restrictions." Nurse practitioners are not considered "acceptable medical sources," as defined in 20 C.F.R. § 416.913(a).  However, evidence from "other sources," including nurse practitioners, may be used to show the severity of an individual's impairment(s) and how it affects the individual's ability to work. 20 C.F.R. § 416.913(d).

In reaching his determination concerning Plaintiff's RFC for work, the ALJ's decision reflects consideration of a nurse practitioner's opinion, which was contained in a letter addressed to the Oklahoma City Housing Authority and dated November 25, 2002.  (TR 21, 245).  In this letter, the nurse practitioner stated that Plaintiff had been her patient for approximately 13 years and that Plaintiff had "multiple health problems that impact her daily life including asthma, degenerative joint disease, nystagmus, and depression." (TR 245).  The letter also stated that Plaintiff's "degenerative joint disease prevents her from standing or sitting for long periods and makes it difficult for her to go up and down stairs frequently." (TR 245).

In asserting that the ALJ erred in considering the nurse practitioner's letter opinion concerning limitations caused by Plaintiff's back impairment, Plaintiff relies in large part on a ruling issued by the Social Security Administration, SSR 06-3p.  This ruling was adopted in August 2006, well after the final administrative decision was entered with respect to Plaintiff's disability application and several months after Plaintiff filed the instant appeal. Plaintiff has failed to show that the Social Security Administration intended to apply this new administrative ruling retroactively to disability applications that are deemed final administrative decisions and are pending on appeal before a federal district court.

Moreover, in SSR 06-3p, the agency states that information from medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists "cannot establish the existence of a medically determinable impairment" although their opinions are to be considered "on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, 2006 WL 2329939 ("Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not 'Acceptable Medical Sources' in Disability Claims; Considering Decision on Disability by Other Governmental and Nongovernmental Agencies")(effective Aug. 9, 2006).  The agency further sets forth a nonexclusive list of factors that "can be applied to opinion evidence from 'other sources,'" including (1) how long the source has known and how frequently the source has seen the individual; (2) the consistency of the opinion with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion,  (5) whether the source has a specialty or area of expertise related to the individual's impairment(s), and (6) any other factors that tend to support or refute the opinion. Id.

The ALJ summarized in his decision the medical records from this treating source and noted the inconsistencies between this letter opinion and other evidence, including the absence of work-related restrictions placed on Plaintiff by any treating source and the findings of the consultative examiner concerning Plaintiff's physical examination.  (TR 19, 21).  Thus, the ALJ considered factors deemed relevant by the agency in considering the

opinions of medical sources who are not "acceptable medical sources." <u>See</u> 20 C.F.R. §

416.927(d)(2006).   It is the province of the ALJ to resolve evidentiary conflicts.   <u>See</u>

<u>Rutledge v. Apfel</u>, 230 F.3d 1172, 1174 (10th Cir. 2000)(recognizing federal courts will not

reweigh the evidence in a social security disability appeal).   The ALJ provided reasons for

his decision, and no error occurred with respect to the ALJ's consideration of the opinion of

Plaintiff's treating nurse practitioner.

IV. <u>Step Four - RFC and Demands of and Ability to Perform Past Relevant Work</u>

At the fourth step of the evaluation process required of administrative factfinders, the

ALJ recognized that he was required to determine whether the Plaintiff retained the RFC to

perform the requirements of her past relevant work or other work that exists in significant

numbers in the economy. (TR 20).   The ALJ concluded that Plaintiff retained the capacity

to perform her previous jobs and she was therefore not disabled within the meaning of the

Social Security Act.   Plaintiff contends that the ALJ erred in this analysis and that there is

not substantial evidence in the record to show that she is capable of performing her previous

jobs.

At step four, the claimant bears the burden of proving her inability to perform the

duties of her past relevant work. <u>See</u> <u>Andrade v. Secretary of Health & Human Servs.</u>, 985

F.2d 1045, 1051 (10th Cir. 1993).   At this step, the ALJ must "make findings regarding 1) the

individual's [RFC], 2) the physical and mental demands of prior jobs or occupations, and 3)

the ability of the individual to return to the past occupation, given his or her [RFC]." <u>Henrie</u>

<u>v. United States Dep't of Health & Human Servs.</u>, 13 F.3d 359, 361 (10th Cir. 1993).   <u>See</u>

Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996)(describing three phases of step four administrative analysis). The assessment of a claimant's RFC necessarily requires a determination by the ALJ of the credibility of the claimant's subjective statements. "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)(footnote omitted).

The ALJ found that Plaintiff had the RFC to perform work at the light exertional level "with limited use of her left hand and occasional stooping." (TR 22). Plaintiff contends that there is not substantial evidence to support the ALJ's finding of an RFC to perform the exertional requirements of light work. With respect to her allegedly disabling back impairment, Plaintiff first refers to the opinion of the nurse practitioner contained in the letter dated November 25, 2002, in which the nurse states that Plaintiff's "degenerative joint disease prevents her from standing or sitting for long periods...." (TR 245). Plaintiff posits that other evidence in the record supports the nurse practitioner's opinion. However, the nurse practitioner's letter opinion did not relate any functional restrictions to Plaintiff's ability to work, and the opinion is not supported by other medical evidence in the record.

Although Plaintiff alleged she became disabled in 1997, there are no records of treatment of Plaintiff before January 2002. The treating nurse practitioner found in January

2002 that Plaintiff exhibited lower back pain and that the pain was "probably mechanical strain" for which a month's supply of anti-inflammatory medication was dispensed. (TR 165). At Plaintiff's next visit to the nurse practitioner, Plaintiff reportedly stated that her lower back pain had improved and no further treatment was prescribed for this condition. (TR 164). Plaintiff states that the functional limitations described in the nurse practitioner's November 2002 letter opinion are also supported by x-rays which "confirmed the presence of osteoarthritis when Ms. Bowman presented with radiating lower back pain to the Healing Hands Health Center in September 2002." Plaintiff's Brief, at 20. Actually, a review of this brief and largely illegible medical note shows that Plaintiff was assessed as having osteoarthritis, for which muscle relaxant and pain medications were dispensed. (TR 207). There is no record that Plaintiff underwent an x-ray of her back at this or any other time. There is no further record of treatment of Plaintiff for back pain or other symptoms related to a back impairment.

Plaintiff also refers to the findings of the consultative examiner made in June 2003 with respect to Plaintiff's back range of motion and tenderness. The report of this consultative examination reflects Dr. Metcalf's findings that although Plaintiff exhibited a slightly limited range of back motion and tenderness to palpation in her lower back muscles, Plaintiff exhibited a normal gait, the ability to heel, toe, and tandem walk without difficulty, and good muscle strength and tone in her upper and lower extremities. (TR 211-213). The ALJ expressly relied on the consultative examiner's findings with respect to Plaintiff's ability to walk and her functional restrictions related to her back in finding that Plaintiff is capable

11

of performing work at the light exertional level requiring no more than occasional stooping.

Plaintiff further contends that there is not substantial evidence to support the ALJ's finding that she can perform the exertional demands of light work due to restrictions in the use of her left hand. The ALJ included in the RFC finding the limitation that the Plaintiff's ability to work was compromised by the "limited use of [her] left hand and occasional stooping." (TR 21, 22). In finding that Plaintiff is capable of performing light work, the ALJ relied on the findings of the consultative examiner, Dr. Metcalf, who reported that Plaintiff exhibited good grip strength, good finger dexterity, and good muscle strength and tone in her upper extremities despite a limited range of motion of her left wrist. (TR 211-212). Although the ALJ's finding of "limited use of left hand" was less than clear, the evidence showed that Plaintiff's ability to work was reduced by a nonexertional limitation in the use of her left hand, but that her exertional capacity for light work was not diminished. With respect to the ALJ's RFC finding itself, Plaintiff testified that she could lift up to 25 pounds and that she could pick up and grasp objects such as a glass if she had "a good grip on it" rather than just "grab[bing]" the object. (TR 261). There is substantial evidence in the record to support the ALJ's finding that Plaintiff has the RFC for work at the light exertional level with a non-exertional limitation of limited use of her non-dominant, left hand.

Plaintiff also posits that her asthma and respiratory conditions are not consistent with the ability to perform light work. However, Plaintiff has only occasionally sought medical treatment for asthma or other respiratory problems. Moreover, Plaintiff has been repeatedly advised to stop smoking (TR 152, 164, 190) but has continued to smoke, indicating that her

breathing problems are not severe enough to restrict her ability to work at the light exertional level.   There is substantial evidence in the record to support the ALJ's RFC finding.

Plaintiff contends that the ALJ erred at the second and third steps of the <u>Winfrey</u> analysis by failing to make specific findings concerning the physical demands of Plaintiff's past relevant work and by failing to present hypothetical questions to the VE that set forth all of Plaintiff's limitations.   In this case, the ALJ obtained the testimony of a VE, who provided information concerning the exertional demands and skill levels of Plaintiff's past relevant jobs. (TR 266-267).   The ALJ noted in his decision the VE's testimony that all of Plaintiff's previous jobs were performing at the light exertional level. (TR 22).   This was sufficient to satisfy the requirement that the ALJ must make specific findings with respect to a claimant's past work. <u>See</u> <u>Doyal v. Barnhart</u>, 331 F.3d 758, 761 (10th Cir. 2003)(ALJ did not err in step four analysis when he quoted VE's testimony in support of his findings).   The ALJ posed hypothetical questions to the VE in order to obtain testimony concerning the availability of jobs.   However, the ALJ questioned the VE about the availability of jobs at the sedentary level.   Because the ALJ ultimately determined that Plaintiff was capable of performing work at the light exertional level, the ALJ did not adopt the VE's testimony with respect to the availability of sedentary jobs.   Because the ALJ had no obligation to question a VE in light of his finding that Plaintiff can return to her past relevant work, no error occurred due to the ALJ's failure to pose specific questions to the VE with respect to impairments that he found were not supported by substantial evidence. <u>See</u> <u>Kepler v. Chater</u>, 68 F.3d 387, 392 (10th Cir. 1995).

The agency has defined light work as involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds and a "good deal of walking or standing." SSR 83-10, 1983 WL 31251 ("Titles II and XVI: Determining Capability to do Other Work – The Medical-Vocational Rules of Appendix 2").  Under this definition of light work, "[t]he lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping....They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work." Id.   In this case, the Plaintiff bore the ultimate burden of proving she was disabled, Henrie, 13 F.3d at 361, and Plaintiff failed to show that her RFC for light work with limited use of her left arm and the ability to stoop occasionally precluded the performance of her past relevant jobs.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for supplemental security income benefits.  The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before ___October 23rd_____, 2006, in accordance with 28 U.S.C. §636 and LCvR 72.1. The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this _____3rd_____ day of _____October_____, 2006.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE